

OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

November 22, 2024

Catherine O'Hagan Wolfe, Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: **Supplemental letter brief**
**No. 23-1162, *Nat'l Ass'n for Gun Rts., Toni Theresa Spera Flanigan v. Ned Lamont et al.***
**No. 23-1344, *Eddie Grant et al. v. Ned Lamont et al.***

Dear Ms. Wolfe,

This letter brief is Defendants' response to the Court's orders directing parties to discuss the effect of the renewed decision in *Antonyuk v. James, et. al*, 2024 U.S. App. LEXIS 26958 (2d Cir. 2024) (*Antonyuk II*) on these cases.[1]

The District Court here properly rejected Plaintiffs' motions to preliminarily enjoin Connecticut's gun safety laws, which restrict access to assault weapons and large-capacity magazines (LCMs). Every federal appellate court to consider similar challenges has refused that sweeping relief.[2] Throughout their briefing, Defendants relied on this Court's decision in *Antonyuk v. Chiumento*, 89 F.4th 271, 287 (2d Cir. 2023) (*Antonyuk I*) before that decision was vacated and remanded by the Supreme Court for reconsideration in light of *United States v.*

---

[1] The *NAGR* Plaintiffs challenge Connecticut's assault weapons restrictions, as they were in force until 2023, plus the State's large-capacity magazine restrictions. The *Grant* Plaintiffs challenge the assault weapons restrictions as amended through 2023, but do not challenge LCM restrictions. In all relevant ways, *Antonyuk II* applies equally to both cases.

[2] *Bianchi v. Brown*, No. 21-1255, 2024 U.S. App. LEXIS 19624 (4th Cir. Aug. 6, 2024) (affirming, en banc, a District Court's denial of a preliminary injunction against Maryland's assault weapons restrictions); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 23-1633 (3d Cir. July 15, 2024) (refusing to enjoin Delaware's assault weapons and LCM restrictions); *Ocean State Tactical v. Rhode Island*, 95 F.4th 38, 2024 U.S. App. LEXIS 5723 (1st Cir. Mar. 7, 2024) (same, against Rhode Island's LCM restrictions); *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023), *petition for cert. denied sub. nom. Harrel v. Raoul*, 144 S. Ct. 2491 (July 2, 2024) (same, for Illinois' assault weapons and LCM restrictions).

165 Capitol Avenue
Hartford, Connecticut 06106

*An Affirmative Action/Equal Opportunity Employer*

Supplemental Letter Brief
November 22, 2024
Page 2

*Rahimi,* 144 S. Ct. 1889 (2024). This Court's decision in *Antonyuk II* reaffirms the analysis in *Antonyuk I*, and further demonstrates that this Court should affirm in both *Grant* and *NAGR*.

### ***Antonyuk II* Confirms that Plaintiffs Cannot Win Their Facial Challenge.**

Plaintiffs here brought only facial challenges to Connecticut's gun safety laws, not as-applied challenges. *Antonyuk II* reaffirms that a facial challenge is "the 'most difficult challenge to mount successfully,' because it requires [the challenger] to 'establish that no set of circumstances exists under which the Act would be valid.'" 2024 U.S. App. LEXIS 26958 at *74 (*citing Rahimi,* 144 S. Ct. at 1898). So if the challenged law is valid in just one application, Plaintiffs' claim fails. *Id.*[3] Here, like in both *Antonyuk* and *Rahimi*, this Court is not called on to ask whether only some parts of the statutory scheme might raise constitutional concerns. *Id.* at 1903. It should instead look for some circumstances where the gun safety laws are mostly likely constitutional. *Id.* When it finds them, it should affirm. *Rahimi*, at 1903, n. 2.

As Defendants showed in their briefing, at the very least "some . . . applications" of Connecticut's laws – for instance, their applications to street sweeper shotguns and grenade launchers – are indisputably constitutional and Plaintiffs make no effort to contest this. Similarly, the statutes restrict all magazines capable of accepting more than 10 rounds—including 50 and 100 round drum magazines. *See* Conn. Gen. Stat. 53-202w. Again, Plaintiffs make no effort to claim such magazines are protected by the Second Amendment. Yet Plaintiffs seek to invalidate the entirety of these statutes, and they therefore must show that every weapon and feature prohibited by the statute merits Second Amendment protection and that the challenged restrictions fail to meet the *Bruen* test. They have not even attempted to do so, nor could they. *See, e.g., N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 990 F. Supp. 2d 349, 369-70 (W.D.N.Y. 2013), *affirmed in relevant part by Cuomo*, 804 F.3d at 247 (noting certain "outlawed features" such as "a grenade launcher, bayonet mount, or a silencer" and that bans on such features "require no explanation"); *United States v. Fincher*, 538 F.3d 868, 870, 873-74 (8th Cir. 2008) (sawed-off shotgun is not protected by the Second Amendment); *United States v. White*, No. 13-0440-01-CR-W-SRB, 2017 U.S. Dist. LEXIS 229493, at *8-9 (W.D. Mo. Oct. 13, 2017) ("[T]he Street Sweeper is both a 'dangerous and [un]usual weapon'" and properly banned) (quoting *Heller I*, 554 U.S. at 627).

### **In all other respects, *Antonyuk II* reiterates and bolsters the Court's sound reasoning from *Antonyuk I*, incorporates *Rahimi*, and underscores why this Court should affirm.**

*Antonyuk II* did not alter the reasoning or conclusions of *Antoyuk I*, but rather incorporated reasoning from the Supreme Court in *Rahimi* to further bolster the holdings from *Antoyunk I*. For example, *Antonyuk I* laid out some of the required inquiries at the threshold step of the *Bruen* analysis. As the Court noted in *Antonyuk I* and *II*, "the literal text of the Second Amendment . . . contains no exception and therefore appears to be 'unqualified', its indeterminate

---

[3] This Court repeated *Rahimi*'s articulation of the heavy burden on a plaintiff who brings a facial challenge in *Antonyuk II*. *Antonyuk II*, 2024 U.S. App. LEXIS 26958, *74 (*Bruen* did not "create an 'exception' to the normal rules about facial and as-applied challenges.").

Supplemental Letter Brief
November 22, 2024
Page 3

text is not unlimited as the Supreme Court has repeatedly observed." *Antonyuk II*, 2024 U.S. App. LEXIS 26958 at *41. *Antonyuk I* also ended any argument that the Supreme Court's "dangerous and unusual" limitation is properly reserved for *Bruen*'s second step, and this Court reaffirmed that in *Antonyuk II*. In *Antonyuk I and II*, this Court firmly situated the "dangerous and unusual" inquiry at the threshold stage. Whether a weapon is "dangerous and unusual" goes to whether it is in "common use" for lawful purposes like self-defense—and "common use" is a threshold question. *Antonyuk II*, 2024 U.S. App. LEXIS 26958 at *25 ("common use" is part of the threshold inquiry); *id.* (explaining that the Second Amendment only "protects the right to keep and bear the sorts of weapons that are in common use—a limitation [that] is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'") (internal quotation marks omitted); *id.* at *41 (explaining that Bruen's threshold inquiry melds text and history, requiring a court to "interpret[] the plain text of the Amendment as historically understood.").

*Antonyuk II* also underscored and reaffirmed both *Antonyuk I* and *Rahimi*'s rationale with regard to the historical inquiry of the *Bruen* test. First, *Antonyuk II* recognized that the historical inquiry need not require a "twin" in order to find an appropriate historical analogue. As this Court noted in both *Antonyuk I* and *II*, "a court should not search in vain for a 'historical twin'" but rather a historical analogue. *Antonyuk II*, 2024 U.S. App. LEXIS 26958, *47. It also noted that "*Rahimi* further illustrates this point." *Id.* at *48. As this Court explained, in *Rahimi*, the Supreme Court was "untroubled" by the lack of "a close analogue" to the challenged statute, instead upholding the law based on historical analogues that merely embodied the spirit of the challenged statute. *Id.* at *49. Here, as explained in briefing and at argument, this Court need not even reach the historical inquiry under *Bruen*, but if it does, there are more numerous and more closely similar analogues that demonstrate the historical tradition of regulation sufficient to uphold the challenged statutes than existed in *Rahimi*.

Second, *Antonyuk I* and *II* also both affirm that historical analogues from the Colonial and Founding eras, Reconstruction, and the twentieth century are *all* relevant to this Court's historical analysis and should be considered; not just the Founding as urged by the Plaintiffs. "Because the [statutes are] state law, the prevailing understanding of the right to bear arms in 1868 and 1791 are both focal points of our analysis." *Antonyuk II,* 2024 U.S. App. LEXIS 26958, at * 51. Moreover, time periods "in close proximity" to those dates are important because "it is implausible that the public understanding of a fundamental liberty would arise at a historical moment, rather than over the preceding era… [a]nd it is implausible that such public understanding would promptly dissipate whenever that era gave way to another." *Id.*, at * 51-52. *Antonyuk II* also noted that the Supreme Court similarly considered more recent historical analogues in *Rahimi*. *Id.* at *48-49. Here, Defendants have produced evidence regarding sufficiently similar historical analogues from the Founding through modern times.  Even if Plaintiffs had met their burden on a facial challenge, and even if it was necessary to move beyond the first step of the *Bruen* analysis, this Court should consider all such historical analogues following *Antonyuk I, II,* and *Rahimi*, and affirm.

## **Conclusion**

Both sets of Plaintiffs seek to overturn a detailed set of state statutory protections against wielding unusually dangerous weapons, without full discovery or a trial. But they have not and

Supplemental Letter Brief
November 22, 2024
Page 4

cannot make the indispensable showings to obtain a preliminary injunction. They have not tried to show that Connecticut's laws are unconstitutional in all their applications. 144 S. Ct. at 1898. At *Bruen*'s threshold stage, they have not tried to show that the restricted weapons are used and useful for self-defense. They have not even argued any of the *Winter* factors beyond the merits – a failure that the Third Circuit found doomed an identical challenge. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA*), 108 F.4th 194, 206 (3d Cir. 2024). *Antonyuk II* counsels affirmance by endorsing the District Court's methodology and conclusions, as further explained in Defendants-Appellees' briefing. This Court should affirm.

            Very truly yours,

            *Janelle R. Medeiros*

            Janelle R. Medeiros
            James M. Belforti
            Assistant Attorneys General
            Counsel for Defendants-Appellees

CC: All counsel via ECF